UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CRAWFORD, Administratrix of the Estate of Monty Crawford, Plaintiff, <br><br> v. <br><br> CORIZON HEALTH, INC., et al. <br><br> Defendants. | Civil Action No. 17-113 <br><br> ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION |

## I. INTRODUCTION

The instant matter comes before the Court on a request by the parties for *in camera* review of nine documents that Defendants Corizon Health, Inc. and Corizon, Inc. (collectively, "Corizon") seek to withhold from production to Plaintiff Andrea Crawford on the basis of several asserted privileges. During its *in camera* review, the Court determined that one of these documents, identified on Corizon's privilege log as a "Confidential memorandum" from Corizon Chief Legal Officer, Scott King, Esq., and addressed to Corizon officers, is privileged on its face and need not be produced. This order pertains to the remaining eight documents.

As the Court noted in a prior discovery order, this case involves a claim brought under 42 U.S.C. §1983 by Andrea Crawford, whose decedent Monty Crawford died on May 21, 2015 while detained at the Allegheny County jail. Plaintiff Crawford has brought suit against Corizon, which contracted with the jail to provide medical services, and its individual employees, health care providers working at the jail.

Crawford alleges her son committed suicide while detained in the jail; that he did so as a result of Defendants' failure to dispense certain necessary medications while he was in custody;

and that Defendants' deliberate indifference to his medical needs constituted a violation of his Eighth Amendment rights. In January of this year, the Court denied Defendants' motion to dismiss, holding that the pleadings were sufficient for stating this claim.

## II. BACKGROUND

Plaintiff's Request for Production No. 29 seeks "Any and all reports evidencing any investigation into the death of any inmate at the Allegheny County Jail" within a certain timeframe. Ex. 1 to Pl. Rep. In response, Corizon asserted that this request was overbroad and that the request sought production of "information protected by the attorney client privilege and/or work product doctrine and Peer Review Act." *Id*. In its April 18, 2018 Order Granting Plaintiff's Motion to Compel, however, the Court ruled that the Pennsylvania Peer Review Act did not apply to this federal proceeding. *See* Dkt. No. 136. The Court subsequently found that several of the remaining documents at issue were not privileged and ordered Corizon to produce them; the Court also found that several were in fact attorney-client communications that Corizon had no obligation to produce. *See* Dkt. No.142, Order Re: Motion to Compel.

The parties have now returned to the Court with a dispute over another collection of documents, also responsive to RFP No. 29. At the parties' request, the Court reviewed these documents *in camera*. While the Court was able to discern from the face of the Scott King memorandum that it was privileged, the Court found that the remaining eight documents "are not obviously privileged," and ordered Corizon to show cause as to why those documents should not be produced. *See* Dkt. No. 148. These documents concern the deaths (or "sentinel events") of John Does 1, 2, 3, and 4. Having reviewed the documents at issue *in camera*, Defendants' Response to the Order to Show Cause, and Plaintiff's Reply to Corizon's Response, the Court finds and rules as follows.

## III. DISCUSSION

A. <u>Corizon Has Failed to Establish Entitlement to Privilege Under the Patient Safety and Quality Improvement Act</u>

For the first time in this ongoing dispute over RFP No. 29, Corizon is asserting a "Patient Safety Work Product" privilege under the Patient Safety and Quality Improvement Act, 42 U.S.C. § 299b-22 ("PSQIA").[1] That statute extends a privilege to, *inter alia*, "any data, reports, records, memoranda, analyses, or written or oral statements which . . . are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization." 42 U.S.C.A. § 299b-21(7)(A)(i)(I). Corizon asserts that the documents at issue were submitted to Corizon's patient safety organization ("PSO"). It fails to demonstrate, however, that those documents were "assembled or developed . . . for reporting" to the PSO, an explicit requirement of the PSQIA. *See Dunn v. Dunn, 163 F. Supp. 3d 1196, 1210 (M.D. Ala. 2016)* ("[I]nformation that is not developed *for the purpose of* reporting to a patient safety organization does not become privileged merely because it is in fact reported to one"); *Daley v. Teruel*, __N.E.3d __, 2018 IL App (1st) 170891 (June 28, 2018), ¶ 37 (emphasis added), *citing* Patient Safety Act Guidance, 81 Fed. Reg. 32,655, 32,656 ("[T]he critical inquiry is the purpose of creating the information, and the information will only be considered patient safety work product if it is created "for the purpose of reporting" to a patient safety organization."). Corizon has not met its burden of demonstrating it is entitled to this privilege.

Specifically, in her declaration, Corizon attorney Jennifer Finger states that "all of the documents relating to John Doe Nos. 1, 2, 3, and 4 as identified on the Privilege Log and Supplemental Privilege Log submitted to this Court were placed into Corizon's [Patient Safety

---

[1] Because the Court concludes that Corizon has not met its burden of establishing entitlement to the PSQIA privilege, the Court need not, and does not, rule on Plaintiff's argument that Corizon has waived this privilege.

Evaluation System database ("PSES")] and were submitted to Corizon's PSO." Declaration of Jennifer Finger, Ex. A. to Corizon's Resp. ("Finger Decl."), ¶ 10. She also asserts that those documents were "created for submission into Corizon's PSES" and that generally, "Corizon makes information available and reports information contained in its PSES at the request of" its PSO. What the declaration fails to assert is a simple claim that the *eight documents in question* were "assembled or developed by [Corizon] for reporting to a patient safety organization," an express requirement for a PQSIA privilege. *See id.* On their face, these documents consist of treatment narratives prepared by health care providers, and kept in the ordinary course of business, rather than as documents created for submission to a PSO.[2] A close reading of the declaration and Corizon's argument in its brief indicates that Corizon's policies generally provide for the collection of patient safety information, and that the eight documents in question may at some point have been submitted to the PSO, but Corizon stops short of asserting that those eight documents specifically were "assembled or developed" *for the purpose of* "reporting to a patient safety organization." Significantly, the Finger Declaration omits seemingly critical details about the timing of the submission to the PSO, giving rise to a reasonable inference that these documents were reported to the PSO only after Plaintiff requested them in this proceeding. Whether or not this is true, what is certain is that Corizon has failed to demonstrate a necessary element of the claimed PSQIA privilege.

B. <u>Work Product Doctrine Protection</u>

The doctrine of work-product immunity applies to "material prepared by an attorney acting for his client in anticipation of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990). The doctrine "shelters the mental processes of the attorney, providing a

---

[2] In fact, as to the three documents related to John Doe 3, Ms. Finger asserts they were "made for the purpose of securing legal advice." Finger Decl., ¶ 19.

4

privileged area within which he can analyze and prepare his client's case." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). The critical inquiry in the Third Circuit is two-part: first, whether "litigation could reasonably have been anticipated." *In re Gabapentin Patent Litig.,* 214 F.R.D. 178, 183 (D.N.J. 2003). The second inquiry is whether the documents were prepared "primarily for the purpose of litigation." *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306–07 (D.N.J. 2008). "Documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the work-product doctrine." *See Rockwell Int'l*, 897 F.2d at 1265-66.

Corizon claims that all the documents in question are protected by the work-product doctrine. However, in seeking the protection of the PSQIA patient safety work product privilege (unsuccessfully, for reasons articulated above), Corizon also asserts that all of the documents in question "were created for submission into Corizon's PSES." Finger Decl., ¶ 12. The purpose of the documents submitted to the PSES, according to Corizon, is "to promote quality and patient safety improvement." *Id.* ¶¶ 4-5. It is thus clear that except as noted below, most of the documents at issue were created in the ordinary course of Corizon's business—providing and improving health care.

As a general matter, therefore, Corizon cannot claim work-product protection of these documents, even though they may also be used in preparation for litigation, because "[d]ocuments created for other purposes that prove useful in subsequent litigation are not attorney work product; similarly, documents that are routinely prepared in the ordinary course of business," such as documents created for entry into Corizon's PSES, "are outside the scope of work product protection." *In re Gabapentin Patent Litig.*, 214 F.R.D. at 184. Other than the "Summary of Care" relating to John Doe 4 and Plaintiff, these documents are not a close case in

5

which the material at issue appears to be of both a business and legal nature, and do not reveal "the mental processes of the attorney." The Court addresses each document in turn.

   1. *Documents Related to John Does 1 and 3*

According to Corizon's notes in its Supplemental Corizon Health, Inc, Privilege Log, four of the five documents related to John Does 1 and 3 were prepared by Corizon physicians and one, the two-page summary related to John Doe 1, was created by the Corizon Sentinel Event Committee. Given who prepared the documents and their contents, it is clear that these documents in no way reflect the thoughts and strategies of an attorney preparing for litigation. Moreover, these five documents, which include notes, narrative summaries, and a sentinel event corrective action plan ("CAP"), were, in Corizon's own words, prepared for the purpose of "identifying a measurable strategy to implement opportunities for improvement," not for the purposes of pending litigation. *See* Suppl. Corizon Priv. Log ("Confidential 2 page summary listing corrective action items to implement opportunities for improvement"); *see also* Finger Decl., ¶¶ 16-19 ("these communications may have been ostensibly made in part for business purposes.").

The cases Corizon cites for the proposition that documents created for both business and legal purposes may be protected are inapposite. All of the cited cases concern product created by attorneys whose duties included giving advice of both a business and legal nature, so intertwined as to be indistinguishable. *See, e.g., Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1205 (8th Cir. 1982)("legal advice concerning commercial transactions is often intimately intertwined with and difficult to distinguish from business advice."); *In re Nat'l Smelting*, 1989 U.S. Dist. LEXIS 16962, at **21–22, 1989 WL 109539 (it is "often too difficult, impractical and unrealistic to compartmentalize whether certain advice given to a client is legal in nature or business in nature

in the context of a complicated securities transaction."). This is not the case in this situation, where the physician notes created "to implement opportunities for improvement" of medical care in no way resembles—and is easily distinguishable from—legal strategy. Furthermore, the cases Corizon cites involved documents whose content was "predominantly legal." *See, e.g., Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 308 (D.N.J. 2008); *Sedco Int'l*, 683 F.2d at 1205–06 ("In the present case, evidence indicates the advice given [the client] by his counsel was primarily legal advice."). The content of the documents related to John Does 1 and 3, however, is not remotely legal in nature. The Court finds these documents are not protected by the work-product doctrine.

   2. *Corrective Action Plans for John Does 2 and 4*

Corizon also claims work-product protection for the CAPs related to John Does 2 and 4. The Court finds that neither of these documents is entitled to work-product protection.

First, although Corizon claims in its Response that the two CAPs were prepared by attorney Wiggs, it provides little or no evidence in support of this assertion.[3] Nothing on the face of these documents indicates they were authored by an attorney, and nothing in these CAPs reveals the mental impressions, legal theories, or strategies of an attorney contemplating litigation. To the contrary, as Finger states in her declaration, the CAPs are routine business records created in all sentinel events, prepared "in part for business purposes," to identify a "measurable strategy to implement opportunities for improvement" for the health care providers, not for attorneys. Finger Decl. ¶¶ 21-26. It is difficult to imagine how "a plan for implementing opportunities for improvement" could possibly be related to an attorney's thought

---

[3] Corizon claims both documents were prepared by Alicia Wiggs, at the time in-house counsel for Corizon, although the Finger Declaration refers only to a CAP dated February 16, 2015, and as far as the Court could discern, neither the John Does 2 or 4 CAPs are dated. Finger Decl. ¶ 21.

7

process in preparation for litigation. Neither of these documents contains legal theories or strategy or refer to any litigation generally, let alone specific pending litigation. These two CAPs shall be produced.

### 3. "Summary of Care" for John Doe 4 and Plaintiff

Finally, the "Summary of Care" document related to John Doe 4 and to Plaintiff is stamped "ATTORNEY CLIENT PRIVILEGED/ATTORNEY WORK PRODUCT." As an initial matter, the Court notes that this stamp will not create a privilege or protection where one would otherwise not exist. *See United States v. Singhal*, 800 F. Supp. 2d 1, 10 (D.D.C. 2011)("Whatever other properties "Attorney-client privilege" stamps may have, they certainly do not carry the talismanic power to relieve a party of its obligation to prove each of the privilege's elements in order to take shelter under its protection.").

The Court therefore is still obligated to evaluate Corizon's claimed privilege under the standard set out above. This document differs from the others in that Corizon explicitly describes the document as containing "next steps regarding review and legal involvement." *See* Corizon Privilege Log. And indeed, the document contains sections categorized as "Potential Issues" and "Next Steps" that, unlike the other documents discussed above, refer explicitly to legal strategy that may relate to potential litigation, thereby revealing the attorney's "mental impressions." The Court finds that this document is privileged and merits protection under the work-product doctrine, and that Corizon may therefore withhold it from production.

C. <u>Attorney-Client Privilege</u>

For the reasons given above, the Court finds that the "Summary of Care" relating to John Doe 4 and the Plaintiff is protected by the attorney-client privilege. However, Corizon has failed to meet its burden of establishing that any of the other documents at issue, other than the King

memorandum and the "Summary of Care," are covered by the attorney-client privilege. As Corizon acknowledges, it is black-letter law that the privilege applies only to communications to or from attorneys regarding legal advice. *See* Defendant's Response at 3, *citing Teleglobe Communs. Corp. v.BCE, Inc.*, 493 F.3d 345, 359 (3d Cir. 2007); *see also Upjohn Co. v. United States*, 449 U.S. 383, 395–396 (1981) ("[T]he protection of the privilege extends only to communications and not to facts."). Unlike the memorandum the Court has already determined is privileged and the "Summary of Care," discussed above, none of the other documents contains legal advice or appears to be a communication with an attorney. Indeed, Corizon does not claim any of these documents were communications to or from an attorney, noting in the "To" column of the privilege logs, as to each document, "Not applicable." Even as to the John Doe 3 documents, the Finger Declaration goes only so far as to assert that they were prepared "[i]n response to Attorney King's memorandum and direction," not that they were at any point communicated to the attorney. The Court therefore finds that the attorney-client privilege does not apply to any of these seven documents.

D. Corizon's "Overbreadth" Objection is Overruled

In a footnote, Corizon for the first time invokes its overbreadth objection to RFP No. 29, arguing "there is no correlation between the four identified John Does and the facts, claims or defenses of the instant action." This is not an overbreadth objection, but one of relevance. Even after recent amendment to the definition of the scope of discovery, however, "[i]t is well established that the scope of discovery is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case," and the rules explicitly provide that "[i]nformation within this scope of discovery need

9

not be admissible in evidence to be discoverable." *Bush v. Dickerson*, 2017 WL 3122012, at *4 (6th Cir. 2017), citation omitted; *see also* Fed. R. Civ. P. 26(b)(1).

In the Complaint, Plaintiff asserts that her son is "one of a large number of individuals who have lost their lives in the past few years as a result of a longstanding policy and practice of denying essential medical treatment and medication to inmates at the Allegheny County Jail." Compl. ¶ 3. Plaintiff also alleges that Defendants "(a) had not maintained required staffing levels; (b) had not maintained complete and accurate medical records; (c) had not performed required inmate health assessments; (d) had not provided inmates with required clinical care," among other allegations related to treatment of other inmates at the jail. *Id*. ¶ 67. Furthermore, Plaintiff claims that certain individual defendants "were aware of seriously deficient medication delivery by the Corizon Defendants to inmates at the jail" and failed to take corrective measures. *Id*. ¶ 71. The documents in question are clearly relevant to these and other allegations in the Complaint. Corizon's overbreadth objection, construed as one based on relevance, is overruled.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby orders Defendant Corizon to produce forthwith the seven documents listed on its "Corizon Health, Inc. Privilege Log" and "Supplemental Corizon Health, Inc. Privilege Log," as discussed above, not including (1) the "Confidential memorandum" prepared by Scott King, or (2) the "Summary of Care" relating to John Doe 4 and Plaintiff Crawford, which Corizon may withhold as privileged.

Dated this 10th day of July, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge